1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

7

**DISTRICT OF NEVADA**

8

RIVERCARD, LLC,                    2:12-CV-1150 JCM (CWH)

9                          Plaintiff(s),

10        v.

11
POST OAK PRODUCTIONS, INC., et
12        al.,

13                          Defendant(s).

14

15                                **ORDER**

16        Presently before the court is Canadian defendant Scot Patriquin's motion to dismiss for lack

17   of personal jurisdiction. (Doc. # 12). Plaintiff Rivercard, LLC has responded (doc. # 14), and

18   defendant has replied (doc. # 15).

19   **I.    Background**

20        The facts alleged in the complaint establish that the instant dispute centers around plaintiff's

21   purchase of stock in defendant Patriquin's Canadian client, Post Oak Productions. (Doc. # 1). On

22   or about April 7, 2010, plaintiff invested approximately $1,000,000 in Post Oak Productions under

23   two separate agreements. (Doc. # 1, 4:19-25). Plaintiff contends that the investments were contingent

24   on several conditions being satisfied, including Post Oak Productions being successfully awarded

25   an exclusive contract from Harrah's Interactive Entertainment to operate the World Series of Poker

26   online training website. (Doc. # 1, 6:4-7). Approximately $800,000 was paid for a 25% interest in

27   the company through a subscription agreement, while $200,000 was transferred in the form of a loan

28

**James C. Mahan**
**U.S. District Judge**

1   through a loan agreement, payable after a year upon presentation of a demand note. (*Id.*)

2         Plaintiff alleges that the necessary documents related to closing were not perfected and

3   completed, due to the fault of all named defendants. (Doc. # 1, 7:23-25). Plaintiff also alleges that

4   defendants had failed to actually issue the 25% interest in Post Oak Productions. (Doc. # 1, 8:1-3).

5   Plaintiff contends that instead, it was issued shares in an unrelated shell company, believed to be

6   named 2084701 Ontario, Inc. (Doc. # 1, 8:4-6).

7         Defendant Patriquin is a Canadian-based attorney who advised defendant Post Oak

8   Productions and its officers, Goldenberg and Rosen.[1] (Doc. # 1).

9         Defendant Patriquin brings the instant motion contending that neither general nor specific

10  personal jurisdiction exists over him, and as a result, maintaining this civil suit in the District of

11  Nevada violates his due process rights. (Doc. # 12). Plaintiff seemingly concedes that there is no

12  general jurisdiction. (Doc. # 14).

13        However, plaintiff argues that specific jurisdiction exists because defendant purposefully

14  directed his behavior toward Nevada. (Doc. # 14). Plaintiff contends that defendant Patriquin,

15  knowing plaintiff was a Nevada-based company, advised defendant Post Oak Productions on the

16  investment deal with plaintiff, including, but not limited to, drafting documents and corresponding

17  directly with plaintiff. (Doc. # 1).

18  **II.    Personal Jurisdiction Legal Standard**

19        Nevada may exercise personal jurisdiction over a non-resident via the Nevada long-arm

20  statute. NEV. REV. STAT. 14.065. The statute is consistent with the due process clause of the

21  Constitution. *Id.*

22         The plaintiff bears the burden of establishing that jurisdiction is proper when a motion to

23  dismiss for lack of personal jurisdiction is before a court. *Boschetto v. Hansing*, 539 F.3d 1011, 1015

24  (9th Cir. 2008). However, "[i]f the court decides the motion without an evidentiary hearing, . . . then

25  'the plaintiff need only make a prima facie showing of the jurisdictional facts.'" *Id.* (quoting *Sher*

26  *v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). In determining whether personal jurisdiction

27  ──────────────

28        [1]Goldenberg and Rosen are also named defendants.

**James C. Mahan**
**U.S. District Judge**                                              - 2 -

1   exists, the district court resolves all disputed facts in favor of the plaintiff. *Pebble Beach Co. v.*

2   *Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006); *see also Schwarzenegger v. Fred Martin Motor Co.*,

3   374 F.3d 797, 800 (9th Cir. 2004).

4        Specific jurisdiction arises only if the claims "arise out of" or "relate to" the non-resident

5   defendant's contacts with the forum state, "even if those contacts are isolated and sporadic." *LSI*

6   *Indus. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000); see also *Burger King Corp.*

7   *v. Rudzewicz*, 471 U.S. 462.

8        The Ninth Circuit analyzes three factors to determine whether a party has sufficient minimum

9   contacts to be susceptible to specific personal jurisdiction:

10       (1) the non-resident defendant must purposefully direct his activities or consummate
         some transaction with the forum or resident thereof or perform some act by which he
11       purposefully avails himself of the privilege of conducting activities in the forum,
         thereby invoking the benefits and protections of its laws; (2) the claim must be one
12       which arises out of or relates to the defendant's forum-related activities; and (3) the
         exercise of jurisdiction must comport with fair play and substantial justice, i.e. it
13       must be reasonable.

14   *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124 (9th Cir. 2010). Plaintiff bears the

15   burden of proving the first two prongs of the test, with defendant tasked with refuting that exercise

16   of jurisdiction is reasonable. *Id*.

17   **III.   Discussion**

18        *a.    Purposeful Direction*

19        The first prong of the specific jurisdiction analysis is aimed at ensuring that the non-resident

20   defendant is not haled into court based upon random, fortuitous, or attenuated contacts with the

21   forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

22        The Supreme Court established the three prong *Calder* effects test to determine whether a

23   defendant purposefully directed his activities toward the forum state. *Schwarzenegger v. Fred Martin*

24   *Motor Co.*, 374 F.3d 797 (9th Cir. 2004). "Defendant must have: (1) committed an intentional act;

25   (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be

26   suffered in the forum state." *Id.* at 803.

27   . . .

28

**James C. Mahan**
**U.S. District Judge**

1    Here, the court finds that defendant Patriquin's contacts with Nevada were not random,

2    fortuitous, or attenuated. Rather, defendant Patriquin prepared documents and corresponded with

3    plaintiff, while having full knowledge of plaintiff's Nevada residence.

4    After preparing an initial informational memo to his Canadian client, defendant Patriquin

5    directly contacted plaintiff via email, attaching the documentation for the investment arrangement.

6    By corresponding with a Nevada resident for the express purpose of facilitating a business

7    transaction with a Nevada resident, "the defendant has performed some act or consummated some

8    transaction within the forum," thereby satisfying the first prong of the specific jurisdiction analysis.

9    *See Bancroft & Masters, Inc.*, 223 F.3d at 1086.

10   Such a contact was sufficient in *Burger King* to support a finding of personal jurisdiction.

11   There, the Court explained that the defendant "'reach[ed] out beyond' his [home state] and

12   negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold

13   benefits that would derive from affiliation with a nationwide organization." *See Burger King, 471*

14   *U.S.* at 479-480. Similarly, here, the defendant reached out beyond Canada and facilitated a contract

15   with a Nevada corporation.

16   *b.    Nexus Between Claim and Contacts*

17   In determining whether a particular claim arises out of forum-related activities, the courts of

18   the Ninth Circuit employ a "but-for" test. *See Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995). The

19   requisite test asks "but-for [a defendant's] contacts with the [forum state], would [the plaintiff's]

20   claims against [the defendant] have arisen?" *Id.* at 1500.

21   Here, but-for defendant Patriquin initiating correspondence with plaintiff, providing the

22   requisite documentation (which is alleged to be a main source of misrepresentations) and facilitating

23   the business arrangement between plaintiff and his client, there would not be any claims against him.

24   Accordingly, the "but-for" test is met. *See id.*; *see also Shute v. Carnival Cruise Lines*, 863 F.2d

25   1437, 1445 (9th Cir. 1988) (rejecting a restrictive interpretation of the "arising out of" prong and

26   applying a "but-for" requirement that simply "preserves the requirement that there be some nexus

27   between the cause of action and the defendant's activities in the forum") *rev'd on other grounds* 499

28

**James C. Mahan**
**U.S. District Judge**

1  U.S. 585 (1991).

2         *c.*     *Reasonableness*

3        Where a defendant purposefully avails itself of the forum state, the court presumes that

4  maintaining personal jurisdiction is reasonable. *See Caruth v. Int'l Psych. Ass'n*, 59 F.3d 126, 128

5  (9th Cir. 1995). This presumption can "be overcome by a compelling case that the presence of other

6  considerations would render jurisdiction unreasonable." *Id.* To determine reasonableness, the court

7  balances the following seven factors:

8            (1) the extent of the defendant's purposeful interjection in the forum;

9            (2) the burden on the defendant in defending in the forum;

10           (3) any conflict of sovereignty with the defendant's state;

11           (4) the forum state's interest in adjudicating the dispute;

12           (5) the most efficient judicial resolution of the controversy;

13           (6) the importance of the forum state to the plaintiff's interest in convenient and

14            effective relief; and

15           (7) the existence of an alternative forum.

16 *See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993). Taking these

17 factors into account, the court finds that the maintenance of personal jurisdiction in Nevada is

18 reasonable.

19           (1) Purposeful Interjection

20       The Ninth Circuit has held that the purposeful interjection factor of the reasonableness

21 analysis is analogous to the purposeful availment element of specific jurisdiction. *Sinatra v. Nat.*

22 *Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988). Accordingly, whereas the plaintiff has alleged

23 sufficient jurisdictional facts to show that defendant purposefully directed his activities toward

24 Nevada, this factor weighs in favor of finding jurisdiction.

25           (2) Burden on the Defendant

26       "We examine the burden on the defendant in light of the corresponding burden on the

27 plaintiff." *Sinatra*, 854 F.2d at 1199 (citing *Brand v. Menlove Dodge*, 796 F.2d 1070, 1075 (9th Cir.

28

**James C. Mahan**
**U.S. District Judge**

1986)). Defendant simply states that litigating this matter in Nevada will be an undue burden. (Doc. # 12, 9:5-6).

Plaintiff claims that defendant Patriquin has specifically accepted Nevada through the choice of venue clause specified in the subscription agreement. (Doc. # 14, 13:15-18). As a non-party to the contract, the court does not consider this contention relevant to this analysis.

Neither party has provided a number of witnesses or claimed an inability to travel to either party's home forum. The court, therefore, finds that the burden would be comparable for both parties.

Accordingly, the court favors a finding of jurisdiction. *See Pebble Beach Co.*, 453 F.3d at 1154 (explaining that district court resolves all disputed facts in favor of the plaintiff).

(3) Conflicts of Sovereignty

"Litigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988). This factor "is not dispositive because, if given controlling weight, it would always prevent suit against a foreign national in a United States court." *Sinatra*, 854 F.2d at 1199 (quoting *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1333 (9th Cir. 1984)).

Defendant Patriquin contends that there is a conflict of sovereignty with Canada. (Doc. # 12, 9:9-12). However, defendant Patriquin has not pointed to any conflicts or inconsistencies between Canadian laws and the laws under which plaintiff has brought its complaint.

(4) Forum State's Interest

Each state has an interest in deciding the application of its own laws and providing a forum for its residents to redress injuries caused by out of state defendants. *See Kumarelas v. Kumarelas*, 16 F. Supp. 2d 1249, 1255 (D. Nev. 1998); *see also Mirage Casino-Hotel v. Caram*, 762 F. Supp. 286, 289 (D. Nev. 1991) ("Nevada has a vested interest in having courts located within its boundaries deciding on the application of its laws.").

Again, this factor is equal for both parties, but tips in favor of plaintiff in finding jurisdiction. *See Pebble Beach Co.*, 453 F.3d at 1154.

James C. Mahan
U.S. District Judge

- 6 -

1

(5) Efficient Resolution

2       The site where the disputed events took place, or where most of the evidence is located, will

3 normally be the most efficient forum. *Pac. Atl. Trading Co. v. M/V Main Express*, 758 F.2d 1325,

4 1331 (9th Cir. 1985). This factor, however, is "no longer weighed heavily given the modern

5 advances in communication and transportation." *See Panavision Intern., L.P. v. Toeppen*, 141 F.3d

6 1316, 1323 (9th Cir. 1998) (citing *Caruth*, 59 F.3d at 129)).

7       Neither party makes specific arguments under this factor. The events and correspondence

8 took place from both parties' resident locations. This factor is found in favor of plaintiff due to the

9 deference given. *See Pebble Beach Co.*, 453 F.3d at 1154.

10

(6) Plaintiff's Interest in Convenient and Effective Relief

11       Plaintiff has an interest in having a Nevada court interpret United States federal law and

12 Nevada state law. Also, defendant does not dispute plaintiff's convenience in having the dispute

13 resolved in Nevada, rather he simply states that effective relief is also available in Canada and that

14 a co-jurisdiction choice of law clause, naming both Nevada and Ontario, was also present in the

15 subscription agreement. (Doc. # 12, 9:16-21). But as a non-party to the agreement, this choice of law

16 clause is not binding on this court's personal jurisdiction analysis.

17

(7) Alternative Forum

18       As noted, an alternative forum exists in Canada, and as explained above, the courts in the

19 state of Nevada have a vested interest in interpreting Nevada law. *See Mirage*, 762 F. Supp. at 289.

20       Weighing each of these factors, the court finds that the exercise of specific personal

21 jurisdiction over defendant is not unreasonable. Accordingly, the defendant may be subjected to

22 personal jurisdiction in the District of Nevada.

23       The court acknowledges that plaintiff indicated defendant Patriquin provided an

24 informational memo to his client, which was subsequently circulated to plaintiff, and also that the

25 subscription agreement designated Nevada in a choice of law clause. (Doc. # 1). However, the court

26 does not find the above contentions relevant to the instant analysis of personal jurisdiction.

27

28

**James C. Mahan**
**U.S. District Judge**

**IV.     Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant Patriquin's motion to dismiss for lack of personal jurisdiction (doc. # 12) be, and the same hereby is, DENIED.

DATED November 28, 2012.

_____
**UNITED STATES DISTRICT JUDGE**